UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHARINE HUGHES                                    CIVIL ACTION

VERSUS                                              NO. 07-2870

MICHAEL J. ASTRUE, COMMISSIONER                     SECTION "B" (2)
OF SOCIAL SECURITY ADMINISTRATION

**FINDINGS AND RECOMMENDATION**

Pro se plaintiff, Katharine Hughes, seeks judicial review pursuant to Section

405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner

of the Social Security Administration (the "Commissioner"), denying plaintiff's claim

for disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. §§ 405(g),

423. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and Local Rule 73.2E(B).

Hughes filed a timely Memorandum of Facts and Law, Record Doc. No. 18, and

a letter dated September 27, 2007 from her current doctor, Miguel P. Rivera, M.D.

Record Doc. No. 19. Defendant filed a timely reply memorandum. Record Doc. No. 20.

I.      PROCEDURAL HISTORY

Hughes filed an application for DIB on June 11, 2003, alleging disability due to

osteoarthritis, diabetes mellitus with neuropathy, problems with her ankle and her back,

two torn rotator cuffs and depression since January 1, 1996. (Tr. 41-43, 47). Plaintiff's disability insured status expired on June 30, 1999. Therefore, she must show that she became disabled on or before June 30, 1999. (Tr. 16).

After her application was denied initially, plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on May 17, 2006. (Tr. 288-322). On August 31, 2006, the ALJ issued a decision denying plaintiff's application. (Tr. 15-23). After the Appeals Council denied review on March 8, 2007, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 5-7).

II.   <u>STATEMENT OF ISSUES ON APPEAL</u>

Plaintiff, who is proceeding pro se, does not assign any legal errors. Much of her memorandum is devoted to contesting the accuracy of the medical records prepared by her physicians. However, the accuracy of her medical records is not an issue before the court.

Hughes reviews the medical evidence in the record and states some additional or contradictory facts that she says are not in the medical records. She appears to argue ultimately that the ALJ erred by not finding, based on her testimony and the statements of additional facts in her memorandum, that the combination of her impairments is disabling.

Hughes also asks the court to consider Dr. Rivera's September 27, 2007 letter, which is not contained in the record that was before the ALJ.

Thus, the issues raised by plaintiff's appeal appear to be:

1.    Whether the court can consider the new evidence presented in plaintiff's memorandum and in Dr. Rivera's letter.

2.    Whether the ALJ erred by finding that, despite plaintiff's combination of impairments, she had the residual functional capacity to perform her past relevant work as a retail sales clerk.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Plaintiff met the nondisability requirements for a period of disability and disability insurance benefits and was insured for benefits through June 30, 1999.

2.    From January 1, 1996 through June 30, 1999, Hughes had severe impairments of a history of surgery for a disc herniation and degenerative disc disease; a history of a partial meniscectomy of her left knee due to a probable medial meniscus tear; mild arthritis of her left knee; and a torn rotator cuff with recurrent bursitis of her right shoulder.

3.    Plaintiff's severe impairments do not meet or equal any listed impairments found at 20 CFR, Part 404, Subpart P, Appendix 1.

4.    Hughes also had some non-severe impairments, including diabetes mellitus that was controlled with oral medication, hypertension, right knee pain and right ankle pain.

5.    Her testimony is not totally credible.

3

6.      Plaintiff retained the residual functional capacity for a full range of light, semi-skilled work.

7.      She can perform her past relevant work as a retail sales clerk.

(Tr. 17, 22).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2006).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920;

---

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (2004) ("Medical-Vocational Guidelines").

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." <u>Martinez</u>, 64 F.3d at 174.

B.    <u>Factual Background</u>

Hughes testified that she was 59 years old on the date of the hearing, had graduated from high school and had gone to college for two and one-half years. (Tr. 292-93, 296). She stated that, since 1990, she had worked as a receptionist for two and one-half years and then as a cashier and service desk clerk at K-mart. She said that the job at K-mart involved standing all day, but she generally did not have to lift more than 20 pounds. She testified that she quit K-mart on October 31, 1995 because she had undergone back surgery in August 1995 and could no longer stand for any long period of time. She explained that she had not worked since early July 1995 because she had sciatica, but she actually resigned in October 1995. (Tr. 294-95).

Plaintiff stated that her sciatica improved after her back surgery, but that she still cannot bend over and lift things, or walk very far, without pain. She said that she had knee surgery in 1993 and that she had complained to her doctor of low back pain and pain in both knees in 1997. (Tr. 295). She testified that she was diagnosed with diabetes in 1997.

7

Hughes said that she had stopped seeing her treating physician, Dr. John Montz, before June 1999.[3] She stated that he had been treating her for a torn left rotator cuff, and he told her that she needed surgery and should come back when she was ready to have the operation. (Tr. 296-97). She testified that she never had the surgery and that her left shoulder still hurts, but she has learned not to use her left arm in a way that makes it hurt. (Tr. 297). She said that she did not return to see Dr. Montz after her last visit in 1997 because her husband "was very adamant" that she stop going to doctors because "I was breaking him, breaking the bank." She stated that he wanted her to take medications and only see the doctor for her diabetes. (Tr. 301).

Plaintiff stated that Dr. Dan W. Joachim, who is her current primary physician, treats her mostly for diabetes and high blood pressure, and prescribes medication for pain and cramps in her legs. (Tr. 297-98). She testified that she has pain in her right ankle, left knee and both hips. She said she believed that, when she was working at K-mart before her knee surgery, she put too much weight on her right leg because of the pain in her left knee, which caused pain and swelling in her right ankle and caused her right foot to become flat. (Tr. 298).

---

[3]The medical records show that plaintiff's last visit to Dr. Montz during the relevant time period was on October 6, 1997 with a prescription refill called in on December 2, 1997. (Tr. 93).

Hughes testified that, after the knee surgery, she still had pain that would come and go in her left knee, especially when she stood on her left leg, and that she had back and right hip pain when she was sitting. She said Dr. Joachim prescribed pain medication for all these types of pain. (Tr. 298-300).

Plaintiff stated that she took pain medication and Soma, and that both drugs made her very sleepy, interfered with her thinking and made it hard for her to remember what had happened during the relevant time period. She said that by 1999 she spent most of her time in bed because lying on her side was the most comfortable position, and that she still spends most of her time in bed. (Tr. 300).

When asked by her attorney to describe her abilities from 1997 to 2000, Hughes stated that she decided to take a walk once, but was only able to go 15 or 20 feet and was barely able to make it back inside. (Tr. 301). She testified that no one took care of the household chores at that time, except that her daughters came to the house every now and then to help a little with the chores. (Tr. 301-02). She said she still had problems with the torn left rotator cuff during that time period, but she is right-handed. She stated that she could only lift about 15 pounds with pain at that time. She said she could not have done anything without pain. (Tr. 302).

Plaintiff testified that her husband was an accountant and office manager for Magnolia Chemicals and earned about $33,000 to $36,000 during 1997 to 1999. (Tr.

302-03).  She stated that, on a typical day during that time, she watched television a lot, drove herself to the grocery store once or twice a week and shopped for about 30 minutes while leaning on the basket, but that her daughter had to unload the groceries from the car.  (Tr. 303-04).  She said that, after going to the grocery store, she felt exhausted and had pain in her hips, knees, ankles and back, and she would have to lie down for a while. She said her back, knee and ankle were always painful, but she could not recall which one was worse.

Hughes stated that her youngest daughter lived with her until 1999, when her daughter was 20 years old.  She testified that her daughter helped with the household chores a little bit.  (Tr. 305).  She said that she did the laundry herself and cooked most of the time.  She stated that carrying the laundry out to the garage and then back into the house and putting it away caused a lot of back pain.  She said she did not spend a lot of time cooking at the stove, but would cook something that she could put in the microwave or the broiler, and then she could sit down until it was done.

Plaintiff testified that she could not have worked as a receptionist during that time because she would have sat and cried all day.  (Tr. 306).  She said her depression started in 1985, but she did not see a doctor because she thought it would go away.  Instead, she said it got worse until she did not care about anything.  (Tr. 306-07).  She stated that she did not see a doctor for her depression until she attempted suicide and was admitted to

the psychiatric pavilion at Methodist Hospital from March 15 until March 23, 2001.  (Tr. 307).  She said she had medical insurance through her husband's work at that time, but she did not recall whether it had a high deductible.  (Tr. 307-08).  She stated that she had to pay 20% of everything after the deductible, that she is still trying to pay off the costs of her back surgery and still owes about $1,000 from that.  Plaintiff said she also had to pay for her medications in part.  (Tr. 308).

When asked why she did not seek psychiatric treatment, Hughes said that her daughter had a baby in 1996 when she was not married and that her husband was badly upset by that.  She said that he took out his anger on her.  (Tr. 309).  She stated that she did no chores besides laundry, grocery shopping and cooking.  She testified that she slept a lot during the day and she could not sleep at night because of her constant crying.  She said she had talked to Dr. Joachim and Dr. Rivera about it, and they told her to turn off all the lights and stay in bed until she fell asleep, but sometimes she would lie awake for eight hours crying and thinking about things that bothered her.  (Tr. 309-10).  She said that she moved to a different bedroom from her husband and has not slept in the same room with him for several years.  She stated that he must have known how bad she was feeling, but that he began psychiatric treatment for his own anxiety problems and he never suggested that she receive treatment.  She said he took her with him to his psychiatrist once for a marriage counseling session and all she did was listen.

11

Plaintiff testified that she had almost $300,000 in retirement savings, but only has $8,000 left now because she kept giving money to her daughter, who continued not to work. (Tr. 310). She said she cannot explain why she did this, but her husband was very angry about it. (Tr. 310-11). She said she started spending her retirement savings in 1996 and probably had about one-half of it left in 1999. She stated that she gave it all to her oldest daughter and did not spend any of it on herself because she did not care about herself. (Tr. 311).

Hughes said that the money was in a BellSouth savings plan that she started when she was working for BellSouth and that it grew after she left the company in 1985. She said her husband had access to only a small portion of the account, although he saw the statements, but the majority of it was in her name only. (Tr. 312). She stated that her husband was pressuring her about the cost of her medical care and the amount of money that she was spending on their older daughter. She said she also paid for one-half of her youngest daughter's college tuition beginning in 1997. (Tr. 313).

Hughes testified that she could not have worked as a receptionist for an eight-hour day and 40-hour week because, in addition to crying all the time, she had joint pain and her ankles would swell if she sat for so long. She said that if she sat all day, she would have to spend three or four days in bed for the swelling to go away and to feel well enough to go back to work. (Tr. 314). She stated that she spent 60% or more of her time

in bed in the daytime during the relevant time period because she did not feel like getting up due to depression and because walking and standing caused pain.  (Tr. 314-15).

Plaintiff explained that she waited until May 2003 to file for disability benefits because she did not know anything about Social Security disability benefits until she accompanied a friend to the Social Security office so he could apply for retirement benefits.  She said that, when she asked for a chair, the Social Security worker asked her whether she felt that bad all the time and, when she said yes, asked why she had not applied for disability benefits.  (Tr. 315).

Hughes testified that her husband never told her that she could file for Social Security benefits, but he kept telling her to get up, get a job and go to work.  She said she never replied but would just look at him.  She stated that his comments were one reason she moved to a different bedroom, because she could not stand to be around him any more, and also because she could not sleep with his loud snoring.  (Tr. 316).

Hughes testified that she attempted suicide in March 2001 because she is unable to say "no" to her daughter when she asks for money, she was running out of money, and her husband was pushing her to go to work and she knew that she could not sit or stand anywhere to work.  She felt at the time that no one cared about her and she did not care about herself, so it would be easier to end it all.  She stated that she never looked for work because she knew there was nothing she could do.  She said that, after she left the

hospital in March ,she saw a social worker a couple of times per week until September or October 2001, but she did not seek any other psychiatric treatment.  (Tr. 317).

D.      Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 17-20).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.      Plaintiff's Appeal

1.      Whether the court can consider the new evidence presented in plaintiff's memorandum and in Dr. Rivera's letter.

In her memorandum, Hughes asks the court to consider certain facts that are not in the medical records.  The court cannot consider plaintiff's factual statements in her memorandum to the extent they either contradict or supplement the evidence, including her sworn testimony, in the administrative record.  The function of this court on judicial review is limited to determining whether substantial evidence in the record supports the final decision of the Commissioner as trier of fact.  Perez, 415 F.3d at 461.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's."  Newton, 209 F.3d at 452.

Hughes has the burden of proving her disability with sufficient medical evidence. Reynaud v. Astrue, 226 Fed. Appx. 401, 2007 WL 1119188, at *1 (5th Cir.), cert. denied, 76 U.S.L.W. 3166 (Oct. 1, 2007) (citing Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)).  If she is unable to provide sufficient medical evidence, the ALJ may make a decision based on the information available.  Id.  In the instant case, the ALJ held the record open for plaintiff's attorney to submit additional medical records.  (Tr. 321-22). Thus, the ALJ had sufficient information in the record to make a decision, and only that evidence may be considered by the court on judicial review.

Hughes asks the court to consider Dr. Rivera's September 27, 2007 letter, which is not in the administrative record.  This court may not issue factual findings on new medical evidence and may review such evidence only to determine if a remand is appropriate.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995); Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989).  Accordingly, the court must determine whether the case should be remanded so the Commissioner may consider this material.

The court may only remand for consideration of new evidence upon a showing that the evidence is new and material and that good cause exists for the failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); Garson v. Barnhart, 162 Fed. Appx. 301, 2006 WL 73365, at *2 (5th Cir. 2006) (citing Leggett v. Chater, 67 F.3d 558, 567 (5th Cir. 1995)).  "'In addition, the new evidence

15

must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling.'" Id. (quoting Leggett, 67 F.3d at 567)

"New evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied, and whether there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision."   Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003).

A medical examination conducted after the ALJ's decision "alone is not sufficient to warrant a remand."  Leggett, 67 F.3d at 567.  Here, as in Leggett, Hughes "does not provide a satisfactory explanation for its absence from the initial proceedings.  The evidence consists of a new examination taken far outside of the period in which [Hughes] applied for or was denied benefits.  [Hughes] offers no evidence that [her] current mental [and  physical] disability did not subsequently develop after [her] initial application or that it is not the result of the deterioration of a condition that was not previously disabling."  Id.

Further, Hughes has not demonstrated a reasonable probability that the new evidence would change the outcome of the Commissioner's decision, which applies only to the period of January 1, 1996 through June 30, 1999.  To the contrary, Dr. Rivera's

16

letter, which is dated more than eight years after the relevant time period, indicates that plaintiff's condition may have deteriorated <u>since</u> the ALJ's decision.  For example, Dr. Rivera states that Hughes now has diabetic polyneuropathy (which she did not have in 1999) and is treated with insulin (rather than oral medication) for her diabetes.  The appropriate action which Hughes must take concerning such evidence is to use it as the basis for a new disability application.  <u>Leggett</u>, 67 F.3d at 567.

Accordingly, this court cannot consider plaintiff's new evidence in rendering its decision, nor remand the case to the Commissioner.  Instead, she must submit a new disability application to the Social Security Administration concerning these post-administrative decision developments.

    2.    <u>Whether the ALJ erred by finding that, despite plaintiff's combination of impairments, she had the residual functional capacity to perform her past relevant work as a retail sales clerk</u>.

The standard that the court must apply in determining whether the ALJ erred by finding that Hughes had the residual functional capacity to perform her past relevant work as a retail sales clerk is whether substantial evidence supports the ALJ's conclusions.  I have thoroughly reviewed the record, and I find that the ALJ's opinion is supported by substantial evidence, for the following reasons.

First, the ALJ found that plaintiff's testimony concerning her symptoms and functional limitations was not totally credible.  The ALJ has the responsibility to evaluate

the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court.  Bedford v. Astrue, 236 Fed. Appx. 957, 2007 WL 1733132, at *4 (5th Cir. 2007) (citing Newton, 209 F.3d at 459); Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994).  The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required. Id. at 163-64; Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 164).

In addition, the "mere diagnosis of a mental impairment (such as depression) does not establish a claimant's disability claims."  Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)); accord Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983).  Plaintiff "must show that she was so functionally impaired by her [diagnosed impairment] that she was precluded from engaging in any substantial gainful activity."  Id. (emphasis added); accord Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992).

A claimant's own reports of her symptoms, including pain, fatigue and dizziness, are insufficient to establish a medical impairment. Subjective complaints like these must be corroborated, at least in part, by objective medical evidence. 20 C.F.R. §§ 404.1528(a), 416.928(a), 404.1529(a), 416.929(a); Palomo v. Barnhart, 154 Fed. Appx. 426, 2005 WL 3087881, at *3-4 (5th Cir. 2005); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989).

Furthermore,

> [w]hether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling.

Chambliss, 269 F.3d at 522 (citations omitted).

The ALJ considered plaintiff's subjective complaints and testimony in light of the entire record, including the objective medical evidence, plaintiff's activities of daily living, and her medications and other treatment during the relevant time period. Plaintiff's diabetes was controlled with oral medication, she had no end organ damage and she was not diagnosed with peripheral neuropathy until 2003. (Tr. 88, 90). Her treating physician, John R. Montz, M.D., did not assess any severe impairments

19

regarding her right knee or ankle.  Dr. Montz noted throughout 1995 and 1997 (there are no treatment notes in 1996) that Hughes had shown significant improvement in her back and leg symptoms following her back surgery in 1995 and she had functional motion in her lower back and both knees.  As Hughes testified, Dr. Montz recommended surgery for the torn rotator cuff in her left shoulder, but she never scheduled the surgery and she learned to avoid using her left arm in a way that makes it hurt.  (Tr. 93-100, 297).  In July 1999, Dr. Joachim's progress notes indicate that plaintiff was "doing okay" with her medications for osteoarthritis and that her diabetes, diagnosed in 1997, was under control.  (Tr. 152).  He noted in December 1997 that she "takes care of" her two-year-old granddaughter.  (Tr. 154).  Based on this brief notation, the ALJ concluded that, "[p]resumably, [Hughes] had to watch the child and provide constant care."  (Tr. 18). The ALJ's presumption in this regard is unsupported by the record, but amounts to harmless error that does not affect plaintiff's substantial rights because the ALJ's findings as a whole are supported by substantial evidence.  Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007).

On May 18, 1999, Hughes sought treatment in the East Jefferson Hospital emergency room for a laceration.  She had a history of non-insulin dependent diabetes, arthritis and muscle spasms, but she was in no acute distress.  (Tr. 161).  At an emergency room visit on January 13, 1998 for a foot strain, physical examination

revealed that both knees were non-tender and had full range of motion, her right ankle and toes were normal without instability, her injured right foot was mildly tender and an x-ray of the right foot was normal.  (Tr. 162).

A non-examining state agency medical consultant reviewed plaintiff's records on August 5, 2003 and noted a primary diagnosis of diabetes and a secondary diagnosis of osteoarthritis.  This doctor found that Hughes had no exertional or other physical limitations, opined that the physical findings in the medical record did not fully substantiate her allegations of limitations and found her only partially credible.  (Tr. 208-15).  "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence." Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)).

Furthermore, Hughes did not seek any treatment for depression until she was hospitalized in March 2001, 20 months after the end of the relevant time period, and she attended outpatient counseling after that hospitalization only until September 14, 2001. On January 10, 2005, she was examined by a psychiatrist, Gayle Kennedy Stewart, M.D., at the request of the Social Security Administration.  Dr. Stewart diagnosed a "history of major depressive disorder, still having symptoms, not adequately treated." Dr. Stewart noted that Hughes "does give all the symptoms of major depressive disorder, however,

21

she has chosen not to be treated for it either out of ignorance and she had no explanation for why she did not seek treatment before this and why she stayed on the medication that has not helped her in the last several years." (Tr. 219).

A plaintiff's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Doss v. Barnhart, 137 Fed. Appx. 689, 2005 WL 1463178, at *1 (5th Cir. 2005); Anthony v. Sullivan, 954 F.2d 289,  295 (5th Cir. 1992); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991).

The ALJ sufficiently explained his findings regarding plaintiff's subjective complaints and her credibility, and his reasons are supported by substantial evidence in the record.  Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

This court cannot consider plaintiff's new evidence to make new factual findings, and that evidence does not warrant a remand.  The ALJ did not err by finding that plaintiff has the residual functional capacity to perform her past relevant work. Substantial evidence supports the ALJ's findings.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __3rd__ day of April, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE